# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **AUTO-OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No. _____ |
| | ) | |
| **LANCE DAVIDSON d/b/a** | ) | |
| **DAVIDSON CONTRACTORS, LLC,** | ) | |
| **DAVIDSON CONTRACTORS, LLC,** | ) | |
| **JUSTIN ANTHONY GALLAGHER,** | ) | |
| **MELISSA MARIE GALLAGHER, and** | ) | |
| **JOHN MASON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), by and
through counsel, and for its Complaint for Declaratory Judgment would show unto the Court as
follows:

1.     Auto-Owners is a Michigan corporation with its principal place of business in
Lansing, Michigan.

2.     Defendant Lance Davidson d/b/a Davidson Contractors, LLC ("Davidson") is a
citizen and resident of Walker County, Georgia.  He may be served with a summons and a copy
of the Complaint for Declaratory Judgment at 282 East Nickajack Road, Lookout Mountain,
Georgia 30750.

3.     Defendant Davidson Contractors, LLC ("Davidson Contractors"), is a member
managed limited liability company incorporated under the laws of the State of Tennessee.  Upon
information and belief, Davidson Contractors' two members are Lance Davidson and John
Mason, both of whom are citizens  of the state of Georgia.  Davidson Contractors' principal

place of business is at 103 Jordan Drive, Suite 4, Chattanooga, Tennessee 37421. Davidson Contractors may be served with a summons and a copy of this Complaint for Declaratory Judgment through its registered agent Kyle R. Weems, at 744 McCauley Avenue, Suite 520, Chattanooga, Tennessee 37403.

4.      Defendants Justin Anthony Gallagher and Melissa Marie Gallagher ("the Gallaghers") are citizens and residents of Hamilton County, Tennessee. They may be served with a summons and a copy of the Complaint for Declaratory Judgment at 1191 Natural Way, Soddy Daisy, Tennessee 37379.

5.      Defendant John Mason ("Mason") is a citizen and resident of Catoosa County, Georgia. He may be served with a summons and a copy of the Complaint for Declaratory Judgment at 97 Haggard Road, Ringgold, Georgia 30736.

## JURISDICTION AND VENUE

6.      Davidson, Davidson Contractors, and Mason are subject to the jurisdiction of this Court because they conduct business in Hamilton County, Tennessee, and this action arose out of the construction of a home by Davidson Contractors for the Gallaghers at 1191 Natural Way, Soddy Daisy, Tennessee 37379 in Hamilton County, Tennessee (the "Property").

7.      Davidson is subject to the jurisdiction of this Court under the Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214, in that he transacted business in Tennessee and allegedly committed torts in Tennessee.

8.      Mason is subject to the jurisdiction of this Court under the Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214, in that he transacted business in Tennessee and allegedly committed torts in Tennessee.

9.      The Gallaghers are subject to the jurisdiction of this Court because this action arose out the construction of the Property in Hamilton County, Tennessee.

2

10.     This action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  Auto-Owners seeks a declaratory judgment concerning its rights and obligations under policies of insurance issued to Davidson.

11.     This action concerns an actual case and controversy over whether Auto-Owners has a duty to defend or indemnify Davidson, Davidson Contractors, or Mason pursuant to policies of insurance issued to Davidson.

12.     Venue is proper in this district and division because the policies of insurance issued by Auto-Owners to Davidson were for Davidson's construction business.   The construction at issue was performed in Hamilton County, Tennessee.  Moreover the underlying civil action filed by the Gallaghers against Davidson, Davidson Contractors, and Mason relates to the construction of the Property in Hamilton County, Tennessee.

13.     Under 28 U.S.C. § 123(a)(3), the Southern Division of the Eastern District of Tennessee is the proper venue for actions arising out of Hamilton County, Tennessee.

14.     Venue is proper in this district and division under 28 U.S.C. § 1391 is a substantial part of the events giving rise to this claim occurred in Hamilton County, Tennessee.

15.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

16.     Plaintiff is a citizen of Michigan, and Defendants are citizens and residents of Georgia and Tennessee.  Complete diversity of citizenship exists.

17.     In this Declaratory Judgment action, Auto-Owners seeks a declaration that it has no duty to defend or indemnify Davidson, Davidson Contractors, or Mason in a lawsuit brought against them by the Gallaghers.

18.     The Amended Complaint filed by the Gallaghers alleges that they entered into a contract with Davidson Contractors for the construction of a home.  The contract price for the construction of the home was $290,000.00.  *See Exhibit 1* hereto, Amended Complaint, ¶ 63.

19.     The Gallaghers allege in their civil action that Davidson, Davidson Contractors, and Mason breached the home building contract, breached the covenant of good faith and fair dealing, breached both express and implied warranties, committed negligence, and committed negligent and intentional misrepresentations.  *See generally id.*, ¶¶ 62-107.

20.     Exhibit B to the original Complaint filed by the Gallaghers contains a demand letter in which the Gallaghers' counsel estimates that the cost of remediation, repair, and displacement of the Gallaghers for repair to the Property ranges from $80,000.00 to $150,000.00.  *See* Complaint & Exhibit B thereto, attached hereto as *Exhibit 2*.

21.     The claims brought against Davidson, Davidson Contractors, and Mason by the Gallaghers and the relief sought by the Gallahers exceeds the minimum amount in controversy requirement of $75,000.00 required for this Court to exercise jurisdiction over this matter.

22.     The policy limits of $1,000,000.00 for the policies of insurance issued by Auto-Owners to Davidson for commercial general liability coverage exceed the minimum amount of controversy requirement of $75,000.00 required for this Court to exercise jurisdiction over this matter.

23.     The amount in controversy in this declaratory judgment action exceeds the sum or value of $75,000.00 exclusive of interest and costs.

4

24.    This Court has personal jurisdiction over Auto-Owners, Davidson, Davidson Contractors, Mason, and the Gallaghers.

## SPECIFIC ALLEGATIONS

25.    Auto-Owners issued policies of insurance to Davidson.

26.    The policies issued to Davidson are commercial general liability policies (collectively, "the Policies").

27.    Based on the allegations in the Amended Complaint, Policies issued in 2010 and 2011 are potentially applicable to the claims made in the Amended Complaint.

28.    The first Policy at issue was issued in April of 2010 ("the 2010 Policy"). The policy number for the 2010 Policy is 104619-03384302-10.

29.    The 2010 Policy had an effective date of April 21, 2010 to April 21, 2011. A certified copy of the 2010 Policy is attached hereto as ***Exhibit 3*** and is incorporated into this Complaint for Declaratory Judgment by reference.

30.    A second policy at issue in this case was issued in April of 2011 ("the 2011 Policy"). The policy number for the 2011 Policy is 104619-03384302-11.

31.    The 2011 Policy had an effective date of April 21, 2011 to April 21, 2012. A certified copy of the 2011 Policy is attached hereto as ***Exhibit 4*** and is incorporated into this Complaint for Declaratory Judgment by reference.

32.    The Policies contain the following language as part of the insuring agreement:

## SECTION 1 – COVERAGES

## COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"

5

seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by and "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you or give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

6

**d.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.**    **Exclusions**

This insurance does not apply to:

**a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**l.**    **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.**    **Duties In The Event Of Occurrence, Offense, Claim or Suit**
**c.**    You and other involved insured must:

**(2)**    Authorize us to obtain records and other information.
**(3)**    Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

## SECTION V – DEFINITIONS

**14.**    "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.**    "Products-completed operations hazard":

**a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**    Products that are still in your physical possession; or

**(2)**    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

**(a)**    When all of the work called for in your contract has been completed.

**(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

7

     **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

              Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.**    Does not include "bodily injury" or "property damage" arising out of:

     **(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

     **(2)**    The existence of tools, uninstalled equipment or abandoned or unused materials; or

     **(3)**    Products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.

**18.**    "Property damage" means:

   **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.**    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**27.**    "Your work":

   **a.**    Means:

     **(1)**    Work or operations performed by you or on your behalf; and

     **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

   **b.**    Includes:

     **(1)**      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     **(2)**      The providing of or failure to provide warnings or instructions.

The Fungi or Bacteria Exclusions endorsement also applies to both policies:

## FUNGI OR BACTERIA EXCLUSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**A.**     Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** the following exclusions are added:

     **1**.     Bodily injury" or "property damage" arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents. This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

     **2**.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person, entity or governmental authority.

These exclusions do not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for human consumption.

**B.**     Under SECTION I – **COVERAGES, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY, 2. Exclusions**, the following exclusions are added:

     1.     Arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents. This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

     2.     For any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person, entity or governmental authority.

C.      The following definition is added to **SECTION V – DEFINITIONS**:

"Fungi" means any type or form of fungus, including but not limited to, any mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.

33.     The 2011 Policy contained the following endorsement:

**SUBCONTRACTOR CAUSED PROPERTY
DAMAGE COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following is added to **SECTION I – COVERAGES.**

**SUBCONTRACTOR CAUSED PROPERTY DAMAGE**

1.      **Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages for "subcontractor caused property damage" to "your work" included in the "products-completed operations hazard".

Such damage shall be deemed:

a.      To have been caused by an "occurrence"; and

b.      Not to have been expected or intended from the standpoint of the insured.

This is not an additional amount of insurance and does not increase the **LIMITS OF INSURANCE** shown in the Declarations.

All other policy terms and conditions that apply to **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement**, also apply to the coverage provided by this endorsement.

2.      **Exclusions**

All exclusions that apply to **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** also apply to this endorsement except for the following.

With regard only to the coverage provided by this endorsement, under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, I** is deleted and replaced by the following:

I.      **Damage to Subcontractor's Work**

10

The cost to repair or replace the work that caused the "subcontractor caused property damage" to "your work".

**3.      Limits of Insurance**

With regard only to the coverage provided by this endorsement, **SECTION III – LIMITS OF INSURANCE**, paragraphs **3.** And **5**. Are deleted and replaced by the following:

**3.**      The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of:

    **a.**      Damages under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

    **b.**      Damages under this endorsement.

**5.**      Subject to **3.** Above, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.**      Damages under Coverage **A** for all "bodily injury" and "property damage" arising out of any one "occurrence";

    **b.**      Medical expenses under Coverage **C** for all "bodily injury" arising out of any one "occurrence"; and

    **c.**      Damages under this endorsement arising out of any one "occurrence";

**4.      Other Insurance**

Under      **SECTION IV – COMMERCIAL      GENERAL      LIABILITY CONDITIONS, 4. Other Insurance** is deleted and replaced by the following as it applies to this endorsement only:

No insured shall be entitled to coverage under this endorsement if such insured is covered by any other valid and collectible insurance, including any excess or umbrella liability policy, for a claim also covered by this endorsement.  This provision shall not apply after the limits of all such policies have been exhausted.

**5.      Definition**

Under **SECTION V – DEFINITIONS**, the following definition is added as it applies to this endorsement only:

"Subcontractor caused property damage" means:

    **a.**    Physical injury to tangible property caused by your subcontractor, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured, however, such loss of use must be the result of physical injury to other property arising out of your subcontractor's work. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

All policy terms and conditions that apply to **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** also apply to this endorsement.

34.    On or about February 1, 2016, the Gallaghers sued Davidson and Davidson Contractors and non-party John Mason in a civil action the Circuit Court for Hamilton County, Tennessee styled *Justin Anthony Gallagher and Melissa Marie Gallagher v. Davidson Contractors, LLC, Phillip Lance Davidson, and John Mason*, Hamilton County Circuit Court, No. 16C227 (the "Action").

35.    A copy of the Complaint filed in the Action is attached hereto as ***Exhibit 2*** and is incorporated into this Complaint for Declaratory Judgment by reference.

36.    On December 14, 2016, the Hamilton County Circuit Court entered an Agreed Order Allowing Amendment to Complaint that permitted the Gallaghers to file an Amended Complaint.

37.    A copy of the Amended Complaint filed in the Action is attached hereto as ***Exhibit 1*** and is incorporated into this Complaint for Declaratory Judgment by reference.

38.     The Amended Complaint filed in the Action alleges that on or about October 15, 2010, the Gallaghers and Davidson Contractors entered into a Home Building Agreement (the "Agreement").  *See **Exhibit 1***, Amended Complaint, ¶ 8.

39.     The Amended Complaint filed in the Action alleges that under the Agreement, Davidson Contractors contracted to build the Gallaghers a home at 1191 Natural Way, Soddy Daisy, Tennessee 37379.  *See id.*, ¶ 9.

40.     The Amended Complaint filed in the Action alleges that the Gallaghers were not provided a copy of the Agreement and that Mrs. Gallagher has requested a copy of the Agreement on multiple occasions.  *See id.*, ¶¶ 10-11.

41.     The Amended Complaint filed in the Action alleges that on or about October 15, 2010, the Parties, in addition to executing the Agreement, also executed a separate Payment Schedule, which referenced and incorporated the Agreement therein.  A copy of the October 15, 2010 Payment Schedule is attached to the original Complaint filed in the Action as Exhibit A.  *See id.*, ¶ 13; ***Exhibit 2***, Complaint, ¶ 13 and Exhibit A thereto.

42.     The Amended Complaint filed in the Action alleges that under the Payment Schedule, the Gallaghers and the defendants in the Action agreed to a timeline for construction of the Property.  *See **Exhibit 1***, Amended Complaint, ¶ 14.

43.     The Amended Complaint filed in the Action alleges that pursuant to that timeline, the ground at the Property was not to be broken prior to October 25, 2010.  *See id.*, ¶ 15.

44.     The Amended Complaint filed in the Action alleges that on October 18, 2010, Mason called the Gallaghers and notified them that excavation by a subcontractor was underway at the Property.  *See id.*, ¶¶ 16-17.

45.     The Amended Complaint filed in the Action alleges that during that call, Mason requested a meeting with the Gallaghers at the Property.  *See id.*, ¶ 18.

46.     The Amended Complaint filed in the Action alleges that the Gallaghers intended to visit the Property prior to October 25, 2010 (i.e., prior to the breaking of ground at the Property).  *See id.*, ¶ 19.

47.     The Amended Complaint filed in the Action alleges that as a result of the subcontractor's premature actions on October 18, 2010, the Gallaghers were not able to visit the Property as planned.  *See id.*, ¶ 20.

48.     The Amended Complaint filed in the Action alleges that the Gallaghers and Mason met at the Property on October 18, 2010.  *See id.*, ¶ 21.

49.     The Amended Complaint filed in the Action alleges that excavation on the Property was nearly complete.  *See id.*, ¶ 22.

50.     The Amended Complaint filed in the Action alleges that the clearing of the Property revealed that the Property had a severely steep grade.  *See id.*, ¶ 23.

51.     The Amended Complaint filed in the Action alleges that during the meeting between the Gallaghers and Mason, the steep grade of the Property was a topic of discussion. *See id.*, ¶ 24.

52.     The Amended Complaint filed in the Action alleges that Mason represented to the Gallaghers that he had not noticed the steep grade of the Property until after the Property was cleared for excavation.  *See id.*, ¶ 25.

53.     The Amended Complaint filed in the Action alleges that during the meeting between the Gallaghers and Mason, Mason informed the Gallaghers that the back portion of the Property was subject to a septic easement.  *See id.*, ¶ 26.

54. The Amended Complaint filed in the Action alleges that Mason further represented that he was not previously aware of the septic easement on the back portion of the lot. *See id.*, ¶ 27.

55. The Amended Complaint filed in the Action alleges that Mason further represented that, as a result of the severely steep grade of the Property and the existing septic easement, the house could only be oriented one way, would require a "swale" and retaining walls in order to construct the basement as originally designed and agreed upon, and would require horizontal orientation of the windows. *See id.*, ¶ 28.

56. The Amended Complaint filed in the Action alleges that the Gallaghers relied on Mason and Davidson's professional expertise in making changes to the design and construction of the home based on the dimensions and slope of the lot. *See id.*, ¶ 29.

57. The Amended Complaint filed in the Action alleges that the Gallaghers relied on Mason and Davidson's professional expertise for the changes to design and construction. As a result and based on this reliance, the Gallaghers reluctantly agreed to proceed with construction with the understanding that the dimensions and slope of the lot would not negatively impact the home. *See id.*, ¶ 30.

58. The Amended Complaint filed in the Action alleges that throughout the construction process, Mason and Davidson continually assured the Gallaghers that the home would meet all building codes and the agreed-upon design. *See id.*, ¶ 31.

59. The Amended Complaint filed in the Action alleges that the Gallaghers relied on these assurances. *See id.*, ¶ 32.

60. The Amended Complaint filed in the Action alleges that a certificate of occupancy was obtained for the home on February 10, 2011. *See id.*, ¶ 33.

61. The Amended Complaint filed in the Action alleges that on March 1, 2011 (the "Closing Date"), the parties closed on the sale of the home, and the Property was transferred from Davidson Contractors to the Gallaghers. *See id.*, ¶ 34.

62. The Amended Complaint filed in the Action alleges that since the Closing Date, the Gallaghers' home has exhibited multiple construction defects, including defects related to the home's foundation and overall structure. *See id.*, ¶ 35.

63. The Amended Complaint filed in the Action alleges that six (6) weeks after moving into the Property, the Gallaghers discovered wet carpet in the finished basement. *See id.*, ¶ 36.

64. The Amended Complaint filed in the Action alleges that six (6) weeks after moving into the Property, there was a noticeable odor and general dampness in the finished basement. *See id.*, ¶ 37

65. The Amended Complaint filed in the Action alleges that six (6) weeks after moving into the Property, the Gallaghers discovered mold along the base boards in the finished basement. *See id.*, ¶ 38.

66. The Amended Complaint filed in the Action alleges that the Gallaghers notified Davidson Contractors about the moisture and mold problems. *See id.*, ¶ 39.

67. The Amended Complaint filed in the Action alleges that in response to the Gallaghers' voiced concerns, Davidson Contractors recommended that the Gallaghers wipe the affected areas down with bleach. *See id.*, ¶ 40.

68. The Amended Complaint filed in the Action alleges that after proposing bleach as a solution to the moisture, mold and mildew issues raised by the Gallaghers, Davidson

Contractors, Davidson, and Mason refused to communicate any further with the Gallaghers. *See id.*, ¶ 41.

69.     The Amended Complaint filed in the Action alleges that thereafter, the Gallaghers contacted and retained the services of a remediation company and a foundational waterproofing company. *See id.*, ¶ 42.

70.     The Amended Complaint filed in the Action alleges that these companies determined that the waterproofing work on the basement was incomplete and defective. *See id.*, ¶ 43.

71.     The Amended Complaint filed in the Action alleges that these companies determined that the incomplete and defective waterproofing work allowed moisture to enter the basement. *See id.*, ¶ 44.

72.     The Amended Complaint filed in the Action alleges that the Gallaghers notified Davidson Contractors of these companies' findings and conclusions. *See id.*, ¶ 45.

73.     The Amended Complaint filed in the Action alleges that after being so notified, Davidson Contractors became responsive again. *See id.*, ¶ 46.

74.     The Amended Complaint filed in the Action alleges that Davidson Contractors sent their subcontractor, Choice Waterproofing, to the Property. *See id.*, ¶ 47.

75.     The Amended Complaint filed in the Action alleges that Choice Waterproofing conducted an investigation of the Property and determined, among other things, that: (1) the external waterproofing was not applied high enough on the foundation wall; (2) the French drain that served as the drainage system for the home's foundation was crushed and did not function properly; (3) the downspouts were connected to perforated piping allowing rainwater from the gutters to spill against inadequately waterproofed, exposed concrete block; and (4) a "U"-shaped

17

bend in an exit pipe in the foundation's drain system was preventing collected water from draining away from the house. *See id.*, ¶ 48.

76.     The Amended Complaint filed in the Action alleges that Davidson Contractors used Choice Waterproofing and Gary Lewis Contracting to repair the issues identified by Choice Waterproofing and to remediate mold (the "Remediation and Waterproofing Project"). *See id.*, ¶ 49.

77.     The Amended Complaint filed in the Action alleges that the Remediation and Waterproofing Project took over twenty (20) weeks to be completed. *See id.*, ¶ 50.

78.     The Amended Complaint filed in the Action alleges that during those twenty (20) weeks, Davidson Contractors, Davidson, and Mason exhibited poor communication with the Gallaghers. *See id.*, ¶ 51.

79.     The Amended Complaint filed in the Action alleges that during those twenty (20) weeks, Davidson Contractors, Davidson, and Mason were disrespectful and dismissive of the Gallaghers' concerns. *See id.*, ¶ 52.

80.     The Amended Complaint filed in the Action alleges that beginning in the first half of 2015, the Gallaghers' noticed cracks in the drywall of the guest bedroom, which is located in the front left corner of the house. *See id.*, ¶ 53.

81.     The Amended Complaint filed in the Action alleges that the Gallaghers proceeded to actively monitor these cracks, which revealed that they were increasing in number and size over time. *See id.*, ¶ 54.

82.     The Amended Complaint filed in the Action alleges that in November 2015, the Gallaghers contacted a foundation company to inspect the Property to determine the cause of the cracks. *See id.*, ¶ 55.

3678992.2

83. The Amended Complaint filed in the Action alleges that the company the Gallaghers hired for the inspection found significant cracks running along the entire front portion of the home in both the drywall and the foundation, as well as significant cracks in the poured garage slab. *See id.*, ¶ 56.

84. The Amended Complaint filed in the Action alleges that the company further determined that these cracks were caused by an extreme settling event beneath the front portion of the home. *See id.*, ¶ 57.

85. The Amended Complaint filed in the Action alleges that the company opined that the settling event likely resulted from improper soil work, excavation, engineering and compaction prior to erecting the structure. *See id.*, ¶ 58.

86. The Amended Complaint filed in the Action alleges that the company further determined that the work performed during the Remediation and Waterproofing Project in 2011 was inadequate and defective and was likely another cause to the damage observed in the drywall, foundation and garage slab. *See id.*, ¶ 59.

87. The Amended Complaint filed in the Action alleges that by letter dated January 5, 2016 (the "Demand Letter"), the Gallaghers notified Davidson Contractors of the ongoing defects and issues observed at the Property and demanded immediate remediation. A copy of the Demand Letter is attached as Exhibit B to the original Complaint filed in the Action. *See id.*, ¶ 60; ***Exhibit 2***, Complaint, ¶ 60 and Exhibit B thereto.

88. The Amended Complaint filed in the Action alleges that as of the date of filing of the original Complaint, the Gallaghers have received no response to their Demand Letter from either Davidson Contractors, Davidson, or Mason. *See **Exhibit 1***, Amended Complaint, ¶ 61.

89.     The Amended Complaint filed in the Action brings claims against Davidson, Davidson Contractors, and Mason for breach of contract, breach of the covenant of good faith and fair dealing, breach of warranty, breach of implied warranties, negligence, negligent misrepresentation, and fraud.  *See id.*, ¶¶ 62-107.

90.     The Amended Complaint filed in the Action brings a claim for piercing the corporate veil against Davidson and Mason.  *See id.*, ¶¶ 108-115.

91.     Davidson and Davidson Contractors requested that Auto-Owners provide a defense for them for the claims made in the Action pursuant to the Policies.

92.     Auto-Owners agreed to provide a defense for Davidson, Mason, and Davidson Contractors in the Action subject to a reservation of rights, which included, but was not limited to, the right of Auto-Owners to file a declaratory judgment action to determine whether the Policies issued to Davidson provided coverage for the claims made in the Action by the Gallaghers.

93.     The Policies do not provide coverage for the claims made in the Action by the Gallaghers against Davidson, Mason, and Davidson Contractors.

94.     The Fungi or Bacteria Exclusion in the Policies excludes coverage for any mold damage to the Property.

95.     Based on the allegations of the Amended Complaint filed in the Action, the Gallaghers first discovered and reported to Davidson Contractors alleged damage to the Property prior to the effective date of the 2011 Policy.  *See **Exhibit 1***, Amended Complaint, ¶¶ 34-39.

96.     Because the alleged damage to the Property set forth in paragraphs 34-39 of the Amended Complaint filed in the Action was discovered after the Gallaghers moved into the

Property, the alleged damage falls within the "products-completed operations hazard" as defined in the Policies.

97.     Exclusion 2.l of the 2010 Policy excludes coverage for the alleged damage to the Property set forth in paragraphs 34-39 of the Amended Complaint filed in the Action.

98.     Exclusion 2.1 of the 2010 and 2011 Policies excludes coverage for the claims for alleged property damage to the Property as alleged in the Amended Complaint filed in the Action.

99.     The 2011 Policy does not provide coverage for the alleged damage to the Property set forth in paragraphs 34-39 of the Amended Complaint filed in the Action because the damage was known and reported to Davidson Contractors prior to the effective date of the 2011 Policy.

100.     The alleged damage to the Property set forth in paragraph 48 of the Amended Complaint filed in the Action all relate to issues with waterproofing the Property and are continuing damage arising out of the initial damage discovered prior to the effective date of the 2011 Policy.

101.     Paragraph 44 of the Amended Complaint filed in the Action alleges that it was incomplete and defective waterproofing that allowed moisture to enter the basement.

102.     This is consistent with the previously discovered alleged water and mold damage discovered by the Gallaghers and reported to Davidson Contractors prior to the effective date of the 2011 Policy.

103.     As a result, neither of the Policies provides coverage for the damage alleged in paragraph 48 of the Amended Complaint filed in the action.

104.     The damage alleged in paragraphs 53-59 of the Amended Complaint filed in the Action allegedly occurred and was discovered in 2015.

105.     Auto-Owners did not provide insurance coverage for Davidson, Mason, and Davidson Contractors for damage discovered in 2015.

106.     The Policies only provide coverage for property damage that occurs during the policy period.

107.     Auto-Owners did not have any insurance policy in effect for Davidson, Mason, or Davidson Contractors in 2015.

108.     The Policies do not provide coverage for any claims of damage discovered in 2015 as alleged in the Amended Complaint filed in the Action.

109.     The Policies do not provide coverage for the claim of breach of contract made in the Action.

110.     The Policies do not provide coverage for the claim of breach of the duty of good faith and fair dealing as none of the allegations made in the claim assert a claim for property damage as the term is defined in the Policies.

111.     The Policies do not provide coverage for the claims of negligent misrepresentation or fraud as both claims rely upon intentional misrepresentations that were allegedly "false at the time they were made".  *See **Exhibit 1***, Amended Complaint, ¶ 93.

112.     The Amended Complaint filed in the Action alleges that Davidson, Mason, and Davidson Contractors "intended to induce [the Gallaghers] to rely on their misrepresentations." *See id.*, ¶ 96.

113.     The Amended Complaint filed in the Action alleges that Davidson, Mason, and Davidson Contractors "knowingly and/or recklessly misrepresented material facts to [the Gallaghers] regarding the Property and the structure on the Property."  *See id.*, ¶ 101.

114.     The Amended Complaint filed in the Action alleges that Davidson, Mason, and Davidson Contractors "intended to induce [the Gallaghers] to rely on their misrepresentations so that [the Gallaghers] would commit to the construction project on the Property." *See id.*, ¶ 103.

115.     The expected/intended exclusion in the Policies excludes coverage for the claims of negligent misrepresentation and fraud based on the allegations made in the complaint filed in the Action.

116.     The Policies do not provide coverage for any damages sought in the Action that do not constitute "property damage" or "bodily injury" as those terms are defined in the Policies.

117.     The 2011 Policy excludes coverage for the cost of repairing or replacing a subcontractor's work that caused any "subcontractor caused property damage" to "your work" as those terms are defined in the 2011 Policy.

118.     The Policies do not provide coverage for the claim for piercing the corporate veil as the damages sought do not constitute covered "property damage" or "bodily injury", are outside the scope of the coverage of the Policies, or are excluded from coverage by the terms of the Policies.

119.     The Policies do not provide coverage to Davidson, Mason, and/or Davidson Contractors for the claims made in the Action.

120.     A review of the terms of the Policies as well as of the allegations of the complaint filed in the Action establishes that Auto-Owners does not have any duty to defend Davidson, Mason, or Davidson Contractors in the Action.

121.     A review of the terms of the Policies as well as of the allegations of the complaint filed in the Action establishes that Auto-Owners does not have any duty to indemnify Davidson, Mason, or Davidson Contractors for any judgment entered against them in the Action.

122.    Davidson is a proper party to this declaratory judgment action because he is a named insured on the Policies and this action will determine whether he has insurance coverage under the Policies for the claims made in the Action.

123.    Davidson Contractors is a proper party to this declaratory judgment action because it is a potential insured on the Policies and this action will determine whether it has insurance coverage under the Policies for the claims made in the Action.

124.    Mason is a proper party to this declaratory judgment action because he is a potential insured pursuant to the Policies and this action will determine whether he has insurance coverage under the Policies for the claims made in the Action.

125.    The Gallaghers are proper parties to this declaratory judgment action because they, as the plaintiffs in the Action, have an interest in whether Davidson, Mason, or Davidson Contractors has insurance coverage to pay any judgment that may be entered in the Action in favor of the Gallaghers.

126.    Neither Auto-Owners nor any of the Defendants have sought, by any other legal action to have their respective rights adjudicated under the facts and circumstances presented herein.

WHEREFORE, Auto-Owners prays:

(a)     That service of process be issued and served upon the Defendants listed above;

(b)     That this Court enter an Order declaring Auto-Owners does not have any duty or obligation to defend Lance Davidson d/b/a Davidson Contractors, LLC, John Mason, or Davidson Contractors, LLC, in the Action;

(c)     That this Court enter an Order declaring that Auto-Owners does not have any duty or obligation to indemnify Lance Davidson d/b/a Davidson Contractors, LLC, John Mason, or Davidson Contractors, LLC, for any judgment entered against them in the Action;

(d)     That this Court enter an Order declaring that the Policies do not provide insurance coverage to Lance Davidson d/b/a Davidson Contractors, LLC, John Mason, or Davidson Contractors, LLC, for the claims and damages alleged in the Action; and

(e)     For such other relief as the Court deems equitable and necessary under the circumstances.

Respectfully submitted this the 28th day of March, 2017.

> WOOLF, McCLANE, BRIGHT, ALLEN &
> CARPENTER, PLLC
>
>
> By: *s*/Dean T. Howell_____
>     Howard E. Jarvis, Esq. BPR #006673
>     Dean T. Howell, Esq., BPR #022130
>
> Post Office Box 900
> Knoxville, Tennessee 37901-0900
> Telephone: (865) 215-1000
> Facsimile:  (865) 215-1001
>
> *Attorneys for Plaintiff Auto-Owners Insurance*
> *Company*

25