UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-CV-83 ) |
| LANCE DAVIDSON d/b/a DAVIDSON CONTRACTORS, LLC, DAVIDSON CONTRACTORS, LLC, JUSTIN ANTHONY GALLAGHER, MELISSA MARIE GALLAGHER, and JOHN MASON, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion for Default Judgment [doc. 16], Defendants Justin Anthony Gallagher and Melissa Marie Gallagher's Response in Opposition [doc. 18], and Plaintiff's Reply [doc. 19]. For the reasons herein, the Court will deny the motion.

### I. BACKGROUND

An insurer, Plaintiff Auto-Owners Insurance Company ("Auto-Owners") alleges that it entered into a pair of commercial insurance policies with Defendants Lance Davidson, Davidson Contractors, LLC, and John Mason ("Defendants"), whom Defendants Justin Gallagher and Melissa Gallagher ("the Gallaghers") allegedly hired to build a home. [Compl., doc. 1, ¶¶ 25–32; State Am. Compl, doc. 1-1, ¶¶ 8–9]. After the

home's completion, and within six weeks of moving into the home, the Gallaghers claim that they discovered multiple defects, including cracks in the drywall and foundation, and mold in the basement. [State Am. Compl. ¶¶ 33–48, 53, 59]. These alleged problems with the home prompted the Gallaghers to bring a multi-claim state lawsuit against Defendants in Hamilton County, Tennessee. [*Id.* ¶¶ 62–115].

Now, Auto-Owners brings suit in this Court under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, asking the Court to declare that its insurance policies do not require it to insure, defend, or indemnify Defendants against damages that they incur in the Gallaghers' state suit. [Compl. at 24–25]. The Gallaghers—whom Auto-Owners includes in this declaratory judgment action as defendants—filed an Answer [doc. 6] in response to Auto-Owners' Complaint for Declaratory Judgment. Defendants, however, did not file an answer or seek dismissal under Federal Rule of Civil Procedure 12(b). As a result, Auto-Owners petitioned the Clerk of Court for entries of default against Defendants under Federal Rule of Civil Procedure 55(a), [*see* Appls. Default, docs. 10–12]. Having received these entries of default, Auto-Owners moves the Court for default judgments under Federal Rule of Civil Procedure 55(b)(2).

## II. LEGAL STANDARD

Rule 55(b)(2) permits the Court, in its discretion, to award a default judgment to a plaintiff after the Clerk enters a default under Rule 55(a). *See* Fed. R. Civ. P. 55(b)(2) (providing that a court "may" enter a default judgment). Once the Clerk enters a default, the Court must accept all well-pleaded allegations as true. *See Thomas v. Miller*, 489 F.3d

293, 299 (6th Cir. 2007) (stating that a clerk's entry of default "conclusively establishes every factual predicate of a claim for relief" (citations omitted)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court "must then 'examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to' a default judgment." *Fifth Third Bank v. Canfield*, No. 3:14-CV-00300-CRS, 2014 WL 3853464, at *2 (W.D. Ky. Aug. 5, 2014) (quotation omitted).

### III. ANALYSIS

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For parties "not certain of" their contractual rights, the Declaratory Judgment Act allows them to "avoid accrual of avoidable damages" through "early adjudication," so that they do not have to "wait[] until [an] adversary should see fit to begin suit." *Blakely v. United States*, 276 F.3d 853, 872 (6th Cir. 2002) (quotation omitted); *see Ragen v. Hancor, Inc.*, 920 F. Supp. 2d 810, 843 (N.D. Ohio 2013) (observing that the Declaratory Judgment Act is "a means for clarifying contractual obligations"). When a court issues a declaratory judgment under the Declaratory Judgment Act, it "ha[s] the force and effect of a final judgment." 28 U.S.C. § 2201(a).

*1. Federal Jurisdiction*

The Declaratory Judgment Act is an anomaly because although it is a federal law, it does not create an independent basis for federal jurisdiction. *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Before "invoking the Act," a plaintiff must therefore establish that a court "ha[s] jurisdiction already," *id.*, whether the jurisdictional basis comes from a federal question under 28 U.S.C. § 1331 or diversity of citizenship under 18 U.S.C. § 1332(a), *id.* at 469–70; *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672–73 (1950). The Court's initial task is therefore to decide whether an independent basis exists for jurisdiction. *See Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 691 (E.D. Ky. 2002) ("[T]he plaintiff must establish that the district court has either diversity jurisdiction or federal question jurisdiction before the Court will entertain a declaratory action.").

Auto-Owners maintains that the Court's independent basis for jurisdiction arises under § 1332(a), [Compl. ¶ 15], which of course requires complete diversity between each plaintiff and defendant and an amount in controversy that exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). Alleging that the amount at issue is greater than $75,000 because the insurance policies' limits are $1,000,000, [Compl. ¶¶ 21–23], Auto-Owners meets the amount-in-controversy requirement, *see generally Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992) ("A court must not dismiss an action for failure to meet the amount in controversy requirement unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" (quoting *St. Paul Mercury Indem. Co. v.*

4

*Red Cab Co.*, 303 U.S. 283, 289 (1938))). Auto-Owners is also successful in establishing the existence of complete diversity. First, it pleads that it is incorporated in Michigan and has its principal place of business in Michigan. [Compl. ¶ 1]; *see Vaughn v. Holiday Inn Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003) (recognizing that a corporation is a citizen of its place of incorporation and its principal place of business). Second, it pleads that Defendants Lance Davidson, John Mason, and Davidson Contractors, LLC's individual members are citizens of Georgia. [Compl. ¶¶ 2–3, 5]; *see Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002) (stating that when a limited liability company is a party to a suit, a showing of complete diversity requires a pleading to contain the individual states of citizenship of each member). And lastly, Auto-Owners pleads that the Gallaghers are citizens of Tennessee. [Compl. ¶ 4]. Auto-Owners therefore provides the Court with allegations from which it is able to substantiate that Auto-Owners is of diverse citizenship from each defendant, *see Vaughn*, 56 F. App'x at 250 (requiring a pleading to contain facts from which "complete diversity can be confirmed" (quotation omitted)), leaving the Court with no incertitude about its diversity jurisdiction.

### 2. *Judicial Discretion*

Having concluded that subject matter jurisdiction exists over this action, the Court now must consider whether to apply the Declaratory Judgment Act at all. *See United Apostolic Lighthouse,* 200 F. Supp. 2d at 692 ("Once the Court has determined that subject matter jurisdiction exists, it must evaluate whether this case is appropriate for declaratory judgment pursuant to the Declaratory Judgment Act." (citing 28 U.S.C. § 2201; *Wilton v.*

*Seven Falls Co.*, 515 U.S. 277, 282–83 (1995))). The Court "posses[es] discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282; *see Am. Home Assurance*, 791 F.2d at 64 ("[The] Declaratory Judgment Act confers discretion on courts, not right on litigants[.]" (citing *Green v. Mansour*, 474 U.S. 64, 72 (1985))); *see also* 28 U.S.C. § 2201(a) (stating that courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). In short, the Court is "under no compulsion" to apply the Declaratory Judgment Act. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

In weighing whether to exercise jurisdiction under the Declaratory Judgment Act, the courts in this circuit consider five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). Auto-Owners identifies none of these five factors—a shortcoming that is by itself grounds for denial of its request for declaratory judgment. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

leaving the court to . . . put flesh on its bones." (quotation omitted)). In lieu of an argument based on these five factors, Auto-Owners contends that Defendants, as a consequence of the Clerk's default, have admitted to certain damning allegations in the Complaint and these admissions establish that Auto-Owners has no legal duty to defend, indemnify, or insure them. [Pl.'s Br. at 3–25].

But in a suit arising under the Declaratory Judgment Act, a clerk's entry of default is not a guarantee that a court's entry of default judgment is going to follow. When an underlying state-court suit poses the possibility of inconsistent rulings, the district courts in this circuit and others have denied default judgments in declaratory judgment actions involving insurance policies. *Penn-Star Ins. Co. v. Barr-Bros. Plastering Co.*, No. 2:10-CV-587, 2011 WL 795062, at *1–2 (S.D. Ohio Feb. 28, 2011); *State Farm Mut. Auto. Ins. Co. v. Jackson*, 736 F. Supp. 958, 961–63 (S.D. Ind. 1990). Those courts aimed to avert the risk of "interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart*, 316 U.S. at 495. Any potential for this type of interference "should be avoided" in federal actions under the Declaratory Judgment Act. *Id.*; *see Wilton*, 515 U.S. at 286 (reaffirming that "district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to 'exceptional circumstances' to justify their actions)").

In fact, in urging this Court not to enter a default judgment, the Gallaghers voice this very concern about the potential for judicial interference. They contend that the insurance policies are "not limited in scope as to enforceability only against those parties in Default" and fear that a declaratory judgment would undercut "their ability to pursue

legal action against [Defendants] in the underlying action." [Gallaghers' Resp. at 2]. In reply, Auto-Owners, relying on various cases, contends that the Gallaghers are at most third-party beneficiaries to the insurance policies, whereas it is one of the contracting parties to the policies. [Pl.'s Reply at 2]. As a result, Auto-Owners maintains that any right that the Gallaghers have to pursue their state-court claims is inferior to its own right to pursue a default judgment. [*Id.*].

But again, Auto-Owners omits any analysis under the five-factor framework, providing the Court with no on-point argument for the exercise of its judicial discretion under the Declaratory Judgment Act. And equally as problematical, Auto-Owners does little to furnish the Court with adequate information about the state-court proceedings— that is, information from which the Court might ascertain whether, under the five factors, issuance of a declaratory judgment could result in inconsistent judgments. Apart from the roughly year-old amended complaint that the Gallaghers filed in the state suit, as well as the original complaint, Auto-Owners supplies the Court with no insight into the state proceedings. Although, these pleadings do present the Court with at least one noteworthy takeaway: an awareness that the issues before it in this action ascend from identical facts in the Gallaghers' multi-claim state action. Under these circumstances, the Court typically lacks license to issue a declaratory judgment. *See Am. Home Assurance*, 791 F.2d at 64 (vacating the district court's declaratory judgment after stating that declaratory judgment is "inappropriate" in cases "[w]here complex factual issues are present," "the action

parallels a state court action arising from the same facts," and "alternative remedies are available" (citations omitted)).[1]

In short, the Court needs to be confident that Auto-Owners is not using this action under the Declaratory Judgment Act "as a method of procedural fencing, or as a means to provide another arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326 (citation omitted). For instance, has it pursued a declaratory judgment from the state court, only to have the state court turn it away? *See id.* (rejecting a party's request for declaratory relief because it was "an attempt to have the federal courts do what the state court has already refused to do"). Or has it already obtained a declaratory judgment that it deems adequate in some respects but not in others? *See id.* Or have Defendants filed a cross-claim for indemnification against Auto-Owners in state court, placing the state court in position to resolve, by applying state principles of contractual interpretation, whether the policies require indemnification? *See Am. Home Assurance*, 791 F.2d at 63 ("We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.").

None of these scenarios overtly *appears* to be true, considering that Auto-Owners pleads, in this action, that "[n]either Auto-Owners nor any of the Defendants have sought, by any other legal action to have their respective rights adjudicated." [Compl. ¶ 126]. But then again, Auto-Owners also pleads that "Davidson and Davidson Contractors requested

---

[1] Auto-Owners in fact concedes that "[t]his declaratory judgment action arises out of [the] lawsuit filed in Hamilton County Circuit Court[.]" [Pl.'s Br. at 2].

that Auto-Owners provide a defense for them for the claims made in the [state action] pursuant to the Policies." [*Id.* ¶ 91]. When the Court considers this allegation along with the fact that the Gallaghers' state action has been ongoing for approximately two years, [*see* State Compl., doc. 1-2, at 16], it has cause to be circumspect. Suppose, for instance, that Defendants long ago raised indemnification as an affirmative defense in state court—hardly a far-fetched presupposition in light of the fact that Defendants had "requested" indemnification from Auto-Owners in response to the suit. [Compl. ¶ 91]. The issue of indemnification would then already be before the state court.[2]

This Court is loath to believe that indemnification has not in any way come up in the state action—especially given that, at two years in, its issues are likely well developed if not verging on adjudication. [*See* Gallaghers' Resp. at 2 (pointing out that the state suit is awaiting adjudication)]. And even if this is not the case, Auto-Owners identifies no reason why an indemnity action in state court would not resolve the issue of whether the insurance policies require it to indemnify Defendants—which is a question of state law to begin with. *See Am. Home Assurance*, 791 F.2d at 63 ("The availability of a traditional indemnity action as a more appropriate means of enforcement also argues against the grant of declaratory judgment in this case. Moreover, the only basis of jurisdiction here is diversity jurisdiction. We question the need for federal courts to issue declaratory judgments in such cases[.]").[3]

---

[2] The Court has no way to know whether this is the case because Auto-Owners has not provided it with Defendants' responsive pleading from state court.

[3] Auto-Owners does note that it "agreed to provide a defense for [Defendants] subject to a reservation of rights, which included, but was not limited to, the right of Auto-Owners to file a

In sum, Auto-Owners needs to go further in assuring the Court that the issue of indemnification is not one that belongs in the state court, that it is not already properly before the state court, and that issuance of a declaratory judgment would not encroach on the state court's province. *See Wilton*, 515 U.S. at 286; *Am. Home Assurance*, 791 F.2d at 63; *Grand Trunk*, 746 F.2d at 326. The Declaratory Judgment Act, under which the Court has no obligation to act, demands these very assurances. *See Wilton*, 515 U.S. at 282; *Am. Home Assurance*, 791 F.2d at 63–64. Without them, the Court is simply unconvinced that it is not, unwittingly, running against the state court in a race that may end in inconsistent judgments. *See Grand Trunk*, 746 F.2d at 326 (vacating the district court's declaratory judgment partly because the effect it would have had on state court proceedings was "unclear" from the record).

## IV. CONCLUSION

The Court declines to exercise its broad discretion to issue a declaratory judgment under the Declaratory Judgment Act. Plaintiff's Motion for Default Judgment [doc. 16] is therefore **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge

---

declaratory judgment action to determine . . . coverage." [Compl. ¶ 92]. But it makes no effort to reconcile this contractual prerogative with the notions of inter-judicial interference that the Court must take into account under the Declaratory Judgment Act.

11